*In re* DENISE C., Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Denise C., Respondent-Appellant).

First District (5th Division)    No. 1—02—1535

Opinion filed May 28, 2004.

Richard A. Devine, State's Attorney, of Chicago (Peter Maltese, Assistant State's Attorney, of counsel), for the People.

Amy J. Szczepaniak, William Conroy, and Jeff M. Plesko, all of Guardianship and Advocacy Commission, of Tinley Park, for appellant.

JUSTICE HARTIGAN delivered the opinion of the court:

After a hearing, respondent Denise C. was found to be a person subject to involuntary admission under the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 *et seq.* (West 2002)) and the circuit court ordered that her hospitalization in the Department of Mental Health and Developmental Disabilities (Department) continue. Respondent contends that the order authorizing her continued involuntary admission should be reversed because the State did not comply with section 3—601(b)(2) of the Code, which requires the provision of specified information in a petition for involuntary admission. 405 ILCS 5/3—601(b)(2) (West 2002).

On April 26, 2002, Department social worker Alice Moneypenny filed a petition for the involuntary admission of respondent. The petition alleged that respondent "continues to be subject to involuntary admission" and was "in need of immediate hospitalization" because she was mentally ill and due to that mental illness was reasonably expected to inflict serious physical harm upon herself or another in the near future and was unable to provide for her basic physical needs so as to guard herself from serious harm. Specifically, Moneypenny alleged that respondent "remains very easily agitated and at times paranoid" and had engaged in "karate hand chops and kicks" and "threatening behavior towards staff" because "her hostility is fueled by delusions [that] staff are sorcerers and have evil powers" and because she "accuses women here of wanting her 'husband' (abusive ex-boyfriend) and becomes irate." Where the petition form asked for "the names and addresses of the spouse, parent, guardian, close relative or, if none, a friend of the respondent," Moneypenny answered that respondent "has never provided this information." The petition was supported by psychiatrist certificates by Dr. Phyu Marhla and Dr. Marlene Alejos, indicating examinations on April 26, 2002, the date of the petition.

A hearing was held on the petition on May 7, 2002. Dr. Marhla, the sole witness, testified in part that respondent referred to a certain man as her husband, fiancé, and boyfriend. When Department staff telephoned the man identified by respondent, he cursed and hung up. Respondent referred to particular Department staff members as her brother or son, while in fact they were not related to respondent. No family member of respondent had visited or telephoned her while she was in the Department hospital. When asked by Department staff who could take care of her if she were released and could not go to her husband, respondent identified a community mental health agency. The court found that respondent was subject to involuntary admission and that hospitalization was the least restrictive treatment. Respondent did not object to the petition at the hearing or make a motion to strike or dismiss the petition.

Respondent solely contends on appeal that the order authorizing her continued involuntary admission should be reversed because the State did not comply in its petition for involuntary admission with section 3—601(b)(2) requiring that such a petition contain information regarding relatives, guardians, or friends. She does not challenge the sufficiency of the evidence at trial.

■ Section 3—601(b)(2) of the Code requires that a petition for involuntary admission contain:

"The name and address of the spouse, parent, guardian,

substitute decision maker, if any, and close relative, or if none, the name and address of any known friend of the respondent whom the petitioner has reason to believe may know or have any of the other names and addresses. If the petitioner is unable to supply any such names and addresses, the petitioner shall state that diligent inquiry was made to learn this information and specify the steps taken." 405 ILCS 5/3—601(b)(2) (West 2002).

A petition that does not list relatives or friends or indicate that a diligent inquiry was made to locate them is fatally defective under the Code. *In re Adams*, 239 Ill. App. 3d 880, 884-85 (1993); *In re Wiessing*, 229 Ill. App. 3d 737, 738-39 (1992). Reversal is mandated because the error may prejudice the respondent, even where the respondent did not object in the trial court to the lack of familial information in the petition. *Adams*, 239 Ill. App. 3d at 884-85. However, a petition for involuntary commitment should be read in its entirety, and it is sufficient to provide information required by the Code somewhere in the petition. *In re Bert W.*, 313 Ill. App. 3d 788, 796 (2000). Where a petition did not provide the required familial information but an attached report explained that the respondent refused to give a social history and had no known family or friends except for a named sister whom the respondent would not acknowledge and was thus not contacted, the petition as a whole indicated that a diligent effort had been made to find family and friends as required by the Code and that there was no prejudice to the respondent. *In re Robinson*, 287 Ill. App. 3d 1088, 1095 (1997).

■ Here, while the petition did not list any family members or friends as required by the Code, the question was not simply left unanswered as in *Adams* and *Wiessing*. Instead, the petition stated that respondent had never provided the information and that respondent claimed to have a husband who was in fact an "abusive ex-boyfriend," clearly not the responsible contact person contemplated by the Code. This case is analogous to *Robinson*, where a statement that respondent refused to give a social history and did not acknowledge her one known relative was a sufficient indication of the diligence required by the Code. Also, the hearing testimony indicates that Department personnel asked respondent questions and gathered information to determine whether she had any relatives or friends of the sort contemplated by the Code. In contrast to *Robinson*, where the respondent's sister was not contacted because the respondent did not acknowledge her, here the Department contacted respondent's one known acquaintance, the husband/fiancé/boyfriend, who expressed his refusal to cooperate. It is reasonable to conclude from the evidence that the Department made diligent efforts to find family and friends

as contemplated by section 3—601(b)(2), that willing or concerned family or friends could not be found, and thus that respondent suffered no prejudice.

■ As to respondent's argument that the form petition used here does not comply with section 3—601(b)(2) because it does not solicit from petitioners the name and address of respondent's substitute decision maker, a reviewing court will not reverse a civil commitment for minor deviations in form which cause no prejudice to respondent. *Bert W.*, 313 Ill. App. 3d at 796. A substitute decision maker is a person designated "under the Powers of Attorney for Health Care Law or under the Mental Health Treatment Preference Declaration Act." 405 ILCS 5/1—110.5 (West 2002). Here, there is no indication that respondent designated a substitute decision maker and thus no showing of prejudice. Also, the phrase "substitute decision maker, if any," in section 3—601(b)(2) clearly indicates that the legislature was aware of the prospect that a respondent may not have a substitute decision maker. 405 ILCS 5/3—601(b)(2) (West 2002). While it would be preferable for the State's petition form to refer to all the persons listed in section 3—601(b)(2), we will not reverse the trial court's judgment on such a formal basis absent some showing of prejudice to respondent.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.