Rule 23 order filed
February 11, 2008;
Motion to publish granted
April 2, 2008.

NO. 5-06-0677

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* KEVIN S., a Person Asserted to Be Subject to Involuntary Admission | ) Appeal from the Circuit Court of<br>) Randolph County.<br>) |
| (The People of the State of Illinois, Petitioner-Appellee, v. Kevin S., Respondent-Appellant). | ) No. 06-MH-265<br>)<br>) Honorable Richard A. Brown,<br>) Judge, presiding. |

_____

Modified Upon Denial of Rehearing

JUSTICE DONOVAN delivered the opinion of the court:

Kevin S., respondent, appeals from the grant of the State's petition seeking to continue his involuntary commitment in Chester Mental Health Center pursuant to the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-813 (West 2006)). Respondent contends he is entitled to a reversal of the commitment order because the State failed to comply with the mandates of the Code and failed to prove by clear and convincing evidence that hospitalization was the least restrictive treatment setting alternative available. Respondent also argues he received ineffective assistance of counsel.

Respondent was involuntarily admitted to Elgin Mental Health Center (Elgin) on April 21, 2006. He subsequently was transferred to Chester Mental Health Center (Chester) on May 20, 2006, because he had severe behavior management issues and had attacked staff members at Elgin. On November 16, 2006, a petition for continued involuntary admission was filed, accompanied by two certificates of examination. The petition did not verify that a copy of the petition had been provided to respondent or that a copy of his rights had been provided or explained to him.

1

At the hearing on the petition, Jim Morris, a clinical licensed social worker employed at Chester, testified that respondent had a diagnosed mental illness, schizoaffective disorder, bipolar type, and an antisocial personality disorder. He further reported that respondent had a prior history of hospitalizations and that he had been placed in restraints on several occasions. Mr. Morris also testified that when he interviewed respondent, respondent was unable to state the current date or give his own age and was expressing delusions about his kidneys and urinary functions. He predicted that if respondent were to be placed outside of a structured setting, his condition would deteriorate and he would reasonably be expected to impose serious physical harm to himself or others in the near future. Mr. Morris concluded that respondent was a person subject to involuntary admission and that he should be hospitalized for further treatment. Other evidence revealed that respondent presented bizarre and grossly illogical content of speech, he reported receiving messages from the radio, he exhibited verbal and physical aggression, and he was not responding well to his medications and continued to have auditory hallucinations upon which he acted. Respondent did not testify. The court found that respondent was a person subject to involuntary admission and that he was to be hospitalized with the Department of Human Services.

Respondent first argues on appeal that the judgment of the trial court must be reversed because the petition failed to comply with the Code. Specifically, respondent contends the State violated section 3-813 of the Code (405 ILCS 5/3-813 (West 2006)) by filing the petition for continuing commitment after the expiration of the August 7, 2006, order for commitment. The State also violated section 3-602 of the Code (405 ILCS 5/3-602 (West 2006)), according to respondent, by filing certifications in support of the petition in which the examinations were completed more than 72 hours prior to the filing of the recommitment petition. Respondent also finds fault with the State not providing proof, in violation of section 3-609 of the Code (405 ILCS 5/3-609 (West 2006)), that a copy of the petition and

respondent's rights had been provided to him within 12 hours of filing the petition. The State counters that respondent did not raise any objections to the petition at the hearing, that there is nothing in the record to indicate that the petition did not comply with the Code, and that respondent was not prejudiced by any alleged deficiencies. The State therefore concludes that the order of commitment should be affirmed.

Before addressing the merits, we must first address the issue of our jurisdiction. The commitment order from which respondent appeals was issued on November 22, 2006. It was entered for 180 days and accordingly expired on May 21, 2007. It is therefore impossible for us to grant any meaningful relief, and any decision we render is essentially advisory in nature. Generally, a court will not consider moot questions or render advisory decisions. *In re Robert S.*, 213 Ill. 2d 30, 45, 820 N.E.2d 424, 433 (2004). Questions raised in an appeal that are capable of repetition, yet might evade review because of the short duration of the order, fall under the exception of the mootness doctrine. *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003). Given that respondent has a long history of civil commitment and that it is likely that the circumstances present here may reoccur without the opportunity for a resolution before the case is rendered moot by the expiration of the order, we will address respondent's contentions. We further note that "[a] trial court's determination of whether the evidence is sufficient to continue involuntary commitment is given great deference because it had the opportunity to view the witnesses, determine their credibility, and weigh the evidence." *In re Clark*, 246 Ill. App. 3d 362, 369, 615 N.E.2d 1244, 1249 (1993). We are not to disturb the court's ruling unless it is against the manifest weight of the evidence or, in other words, the evidence clearly establishes that a contrary result was proper. *In re Clark*, 246 Ill. App. 3d at 369-70, 615 N.E.2d at 1249.

Turning first to the issue of whether the petition for continued involuntary admission complied with the Code, we initially note that the only commitment order in the record is the

3

one at issue here. From the record, therefore, it is impossible to tell whether the November 16, 2006, petition was untimely. Overlooking this fact, we note that respondent did not make any objection to the timeliness of the petition, and we conclude that there is no evidence on the record that respondent was prejudiced by the alleged late filing. While involuntary admission procedures implicate substantial liberty interests, these interests must be balanced against the dual objectives of involuntary admissions to provide care for those who are unable to care for themselves and to protect society from the dangerously mentally ill. *In re Robinson*, 151 Ill. 2d 126, 130-31, 601 N.E.2d 712, 715 (1992). Society's interest in providing treatment to the mentally ill while protecting its citizens from harmful conduct is not jeopardized when the record in an involuntary admission hearing establishes that the purposes of the statutory requirements were met and the respondent did not object to claimed errors in the proceeding. *In re Robinson*, 151 Ill. 2d at 131, 601 N.E.2d at 715.

Section 3-813 was designed to prevent patient neglect by ensuring that an involuntarily committed patient's eligibility for commitment was reevaluated at regular intervals. *In re Nau*, 153 Ill. 2d 406, 422, 607 N.E.2d 134, 142 (1992). This purpose was not frustrated by the minor delay that respondent alleges occurred here. Respondent was not neglected by the system; he received a full hearing on the issue of his eligibility for continued commitment. Moreover, had respondent objected to the timeliness of the petition for continuing admission, the petition could have been withdrawn and substituted with a petition for initial commitment. The same substantive evidence that supported respondent's eligibility for continued commitment would have supported his admission under an initial petition as well. See *In re Nau*, 153 Ill. 2d at 422-23, 607 N.E.2d at 142. Given that respondent's eligibility for commitment was evaluated under the proper standard, respondent suffered no prejudice by the late filing. With no prejudice and respondent's failure to object to the untimeliness of the petition, we find no reason to reverse the order of continued

4

commitment on this basis. While strict compliance with statutory procedures in involuntary commitment proceedings is required, a reversal is not required unless the respondent is in some way prejudiced by the failure to comply with those statutory requirements. *In re Louis S.*, 361 Ill. App. 3d 763, 768, 838 N.E.2d 218, 222 (2005).

Respondent also claims that the continuing commitment order should be reversed because the examination of respondent occurred more than 72 hours prior to when the petition was drafted. Section 3-813(b) states, "The provisions of this chapter which apply whenever an initial order is sought shall apply whenever an additional period of treatment is sought." 405 ILCS 5/3-813(b) (West 2006). Respondent suggests that section 3-602, which requires the examination of an individual by a physician, qualified examiner, or clinical psychologist not more than 72 hours prior to an initial involuntary admission to a mental health facility, should therefore apply to continued commitment procedures as well. The 72-hour time limit for examinations contained in section 3-602 applies only to initial involuntary admissions, however. An examination just before initial involuntary commitment is important and necessary to learn about the mental health of the person to ensure that the commitment is actually needed. A person already committed has been under the care of mental health doctors for at least 90 days prior to the filing of a petition for continuing commitment. Consequently, when the petition for continuing commitment is filed, a current treatment plan, including an evaluation of the person's progress, is also filed. 405 ILCS 5/3-813(a) (West 2006). There is no requirement in section 3-813 that the examination be within 72 hours of the filing of the petition. We therefore reject respondent's argument that his petition did not comply with the Code.

For his last claim, respondent contends that there is no evidence in the record establishing that he had been given a copy of the petition and notice of his rights within 12 hours of the issuance of the petition. We again note that respondent did not object to the

5

alleged omission, nor was he prejudiced by it in any event. It is well established that an involuntary admission order is not invalid even if the record fails to contain affirmative proof that the respondent received formal notice of the proceedings when it is evident that he or she received actual notice of the proceedings. *In re Luker*, 255 Ill. App. 3d 367, 370, 627 N.E.2d 1166, 1168 (1993); see also *In re Nau*, 153 Ill. 2d at 418-19, 607 N.E.2d at 140; *In re Splett*, 143 Ill. 2d 225, 230-31, 572 N.E.2d 883, 885-86 (1991). "[T]he State's failure to strictly comply with provisions of the Code may be excused if the record establishes that the purposes of the statute have been achieved." *In re Robinson*, 151 Ill. 2d at 131, 601 N.E.2d at 715. The petition here, filed on November 16, 2006, contains within the petition a copy of the "Rights of Admittee." While the certification that respondent had been given a copy of the petition within 12 hours of its issuance and that he had received a copy of his rights is not signed, respondent and his attorney appeared at the hearing as scheduled and participated in it. At no time prior to the hearing or at the hearing did either respondent or his attorney complain that they had not been given a copy of the petition in a timely manner or that they were unable to prepare the case. As noted in *In re Luker*, "The purpose of the petition is to advise [the] respondent of the proceedings which have been commenced against him in order that he may prepare evidence and argument for the hearing." *In re Luker*, 255 Ill. App. 3d at 371, 627 N.E.2d at 1169. "Parties should not be permitted to take part in a hearing on the merits and then, if they do not prevail, obtain a new hearing by complaining of a procedural defect ' "that could and should have been objected to immediately, could have been easily cured if timely objected to, and made no difference anyway." ' " *In re Luker*, 255 Ill. App. 3d at 371, 627 N.E.2d at 1169 (quoting *In re Splett*, 143 Ill. 2d at 231, 572 N.E.2d at 886 (quoting *In re J.W.*, 87 Ill. 2d 56, 62, 429 N.E.2d 501, 504 (1981))). While a timely objection might have resulted in additional proceedings, it would not have resulted in any benefit to respondent. See *In re Luker*, 255 Ill. App. 3d at 371, 627 N.E.2d

6

at 1169. Having waived any objections to the alleged flaws in the petition for continued commitment, respondent is not entitled to a reversal of his order for continued commitment.

Respondent next takes issue with the evidence supporting the conclusion that hospitalization was the least restrictive treatment setting in this instance. A trial court's decision that hospitalization is the least restrictive alternative should not be set aside, however, unless it is clearly erroneous. *In re David D.*, 307 Ill. App. 3d 30, 34, 716 N.E.2d 1245, 1248-49 (1999). Under the circumstances presented here, we cannot say the court's decision was clearly erroneous, given that the State submitted a report as well as testimony sufficient to establish by clear and convincing evidence that hospitalization was the least restrictive treatment alternative for respondent. Mr. Morris testified that he would not expect respondent to continue his medication if he were to be released from a structured setting and that, as a result, his condition would deteriorate. He noted that even in the structured setting of a hospital, respondent had behavioral management problems and had to be put in restraints as recently as two weeks before the hearing. Respondent was suffering from delusions, and the day before the hearing he could not even state his own age or the day, month, or year. As a result, Mr. Morris recommended hospitalization as the least restrictive treatment alternative. The comprehensive 30-day treatment plan filed with the petition stated that respondent was noncompliant with his medications and that his insight into his psychiatric condition was quite poor. He was noted as exhibiting verbal and physical aggression and presenting bizarre and grossly illogical content of speech. He continued to report that he was receiving messages from his radios, and he was not responding well to his medication, causing him to continue to have active auditory hallucinations upon which he acted. Respondent was diagnosed as suffering from schizoaffective disorder and bipolar and antisocial personality disorder, based on his paranoid persecutory delusions. His psychiatrist and psychologist concurred that in order for respondent to be recommended for a transfer to

7

a less restrictive alternative facility, respondent would have to exhibit an ability to inhibit any significant impulses of violence toward himself or others, must express a genuine desire for a transfer, be cooperative with treatment recommendations, be medication-compliant, and have reasonable plans to maintain a successful placement in a less secure environment. Contrary to respondent's allegations, there was clear and convincing evidence to support the conclusion that hospitalization was the least restrictive treatment alternative.  See *In re Louis S.*, 361 Ill. App. 3d 763, 771, 838 N.E.2d 218, 224 (2005); *In re Wingo*, 253 Ill. App. 3d 440, 442, 625 N.E.2d 422, 423-24 (1993).

For his final point on appeal, respondent contends he was denied the effective assistance of counsel, and he urges us to reject the well-accepted standard of review for claims of ineffective assistance of counsel with respect to cases dealing with the mentally ill. To prove the ineffective assistance of counsel, a defendant must prove both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance caused prejudice in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different.  *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004).  As discussed in *In re Carmody*, the *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)) has been applied for evaluating claims of ineffective assistance of counsel in other civil law contexts such as determining malpractice claims, the termination of parental rights, and abuse and neglect cases and has been adopted in other areas of the law dealing with the mentally ill who are facing a loss of liberty.  *In re Carmody*, 274 Ill. App. 3d 46, 56-57, 653 N.E.2d 977, 985 (1995).  We see no reason to reject the *Strickland* standard at this time, because it appears to be sufficient to protect the right to the effective assistance of counsel for a civil commitment.  Here, respondent suffered no prejudice based on the alleged procedural errors.  He received a full hearing before a finder of fact on the

issue of his continued eligibility for involuntary admission and was found to be subject to involuntary commitment. Respondent was not neglected; any delay was only a matter of a few days and he continued to receive treatment during that time frame. Any of the alleged deficiencies clearly did not prejudice respondent. Counsel, therefore, was not ineffective. Other petitions, certificates, and notices could have been filed, but the result would have been the same given respondent's long history of mental illness and his failure to respond to medication and hospitalization. Objections by trial counsel might have resulted in additional proceedings but would not have resulted in any benefit to respondent. See *In re Luker*, 255 Ill. App. 3d at 371, 627 N.E.2d at 1169. Again, we find no ineffective assistance of counsel in this instance.

For the foregoing reasons, we affirm the judgment of the circuit court of Randolph County.


Affirmed.


GOLDENHERSH and SPOMER, JJ., concur.