Rule 23 order filed
November 3, 2010;
Motion to publish granted
December 9, 2010.

NO. 5-08-0620

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* JOSEPH M., Alleged to Be a Person Subject to Involuntary Admission to a Facility | ) Appeal from the Circuit Court of ) Randolph County. ) |
| | ) No. 08-MH-225 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Joseph M., Respondent-Appellant). | ) ) Honorable ) William A. Schuwerk, Jr., ) Judge, presiding. |

_____

PRESIDING JUSTICE CHAPMAN delivered the judgment of the court, with opinion. Justices Goldenhersh[1] and Welch concurred in the judgment and opinion.

The respondent, Joseph M., appeals an order finding him subject to an involuntary admission. He argues that (1) the State did not establish by clear and convincing evidence that he was subject to an involuntary admission, (2) the State did not establish that hospitalization was the least restrictive alternative for treatment, (3) the petition failed to comply with the statutory requirement that it include the name and address of a close relative or friend, and (4) the record does not contain a statement of the court's findings of fact. The State argues that this court lacks jurisdiction to decide this case because (1) the notice of appeal filed by Joseph M. did not comply with the requirements of Supreme Court Rule 303 (210 Ill. 2d R. 303) and was, therefore, not effective to confer jurisdiction and (2) the case is moot and no exception to the mootness doctrine applies. We find that we have jurisdiction and we reverse the order of the trial court.

Joseph M. was first admitted to a facility for mental health care in 1984. He was

_____

[1]At the time this decision was originally filed, as an order under Supreme Court Rule 23 (166 Ill. 2d R. 23), Justice Goldenhersh was the presiding justice.

1

subsequently admitted on five occasions between 1997 and 1999. In 1999, Joseph was admitted to Chester Mental Health Center (Chester) after he was found unfit to stand trial on charges of aggravated criminal sexual assault in Cook County. He was subsequently transferred back to the Cook County jail and later transferred once again to Chester.

The petition that forms the basis of this appeal alleges that Joseph M. is subject to continued involuntary admission because he suffers from a mental illness, as a result of which he is (1) reasonably expected to engage in dangerous or threatening behavior toward others and (2) unable to provide for his own needs or protect himself from serious harm. Attached to the petition are two certificates. One was signed by social worker Kristy-jon Ekes. Ekes stated that Joseph suffered from delusions of a grandiose and religious nature and believed that the government was using satellites to monitor his movements. Ekes noted that Joseph had a history of physical violence and experienced "significant mood symptoms," including occasional hostility. Finally, Ekes stated that Joseph has refused medication in the past and that he would stop taking medication if he were released.

The second certificate was signed by psychiatrist S.K. Suneja. Dr. Suneja's observations were consistent with Ekes' statement. Dr. Suneja additionally stated that although Joseph M. had not engaged in any acts of physical aggression since an incident in May 2007, he became agitated when anyone challenged his assertion that he was the "ambassador of ambassadors" of Jesus Christ. Dr. Suneja noted that Joseph denied having received any mental health treatment in the past. Joseph was diagnosed with schizoaffective disorder (bipolar type) and paranoid schizophrenia.

The only witness to testify at the hearing on the petition was Jamia Klausing, a licensed clinical social worker who was not a member of Joseph M.'s treatment team. Klausing testified that she interviewed Joseph in his living unit, although she did not specify when this interview took place. She further testified that she reviewed Joseph's records and

2

discussed his case with members of his treatment team.

Klausing described Joseph's delusions, explaining that he believed that he was the "ambassador of ambassadors" of Jesus Christ, something which gave him special privileges. Additionally, she stated that Joseph believed that the government was monitoring his movements with satellites and that Jesus would return in one year and five months to pass judgment on the courts and judges for all they had done to him. When asked if Joseph had any behavioral problems, Klausing admitted that he had not had any since May 2007 (18 months before the hearing). She attributed this to his medication, however, and emphasized that Joseph would not take medication if it was not "court-enforced." Counsel for the State then asked, "So the answer, of course, to my question, then, you wouldn't expect him to continue to take this medication were he released today ***, would you?" Klausing responded, "No, and he has stated that he would not." She opined that without his medication, Joseph would become aggressive and would pose a risk to people in the community.

On cross-examination, Klausing admitted that Joseph's treatment team had, indeed, been considering moving him to a less restrictive setting for treatment. When asked if this was still being considered, she replied: "That is being–is being discussed. They're trying to talk to Mr. M[.] about taking his medication voluntarily, without the enforced order." She also acknowledged that Joseph's condition had improved with treatment.

At the end of the hearing, the court found as follows:

"Mr. M[.] is a person subject to involuntary admission. Although he has not exhibited any physical aggression since May of '07, there is some evidence of some severe delusions and that he is a risk to the community and himself if he is not involuntarily *medicated*. As such, the Court finds that he shall be hospitalized *** which is the least restrictive environment currently appropriate and available ***." (Emphasis

3

added.)

The court entered an order finding Joseph subject to continued involuntary admission for a period of 180 days. The order was entered on November 19, 2008, the same day the hearing was held.

Shortly thereafter, Joseph M. mailed to the court a notice that stated, in its entirety, "Joe Henry M[.] will like to appeal my case November 19, 2008, State Illinois Circuit Court for the 20th Judicial Circuit Randolph County Courthouse." The Guardianship and Advocacy Commission was appointed to represent Joseph M. in this appeal. No amended notice of appeal was filed.

Before considering the merits of Joseph M.'s appeal, we must address the State's jurisdictional arguments. The State first argues that the notice of appeal we have just described was insufficient to confer jurisdiction on this court because it failed to comply with various requirements of Rule 303. For example, the State contends, it is not titled "Notice of Appeal" (see 210 Ill. 2d R. 303(b)(1)(iii)), does not state that it is an appeal to the Fifth District Appellate Court (see 210 Ill. 2d R. 303(b)(1)(i)), does not include the case name with a designation of parties (see 210 Ill. 2d R. 303(b)(1)(ii)), and is not signed by Joseph or an attorney representing him (see 210 Ill. 2d R. 303(b)(4)). In addition, the State contends that he did not serve a copy of his notice of appeal as required by Rule 303(c) (210 Ill. 2d R. 303(c)). We do not find any of these flaws fatal to our jurisdiction.

As the State correctly points out, the filing of a notice of appeal is necessary to invoke the jurisdiction of the appellate court. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433-34, 394 N.E.2d 380, 382-83 (1979); *Nussbaum v. Kennedy*, 267 Ill. App. 3d 325, 329, 642 N.E.2d 151, 155 (1994). This does not mean that strict compliance with every requirement of Rule 303 is needed to confer jurisdiction. The purpose of a notice of appeal is to apprise the prevailing party that his opponent seeks appellate review. *Burtell*, 76 Ill. 2d

4

at 433, 394 N.E.2d at 382; *Nussbaum*, 267 Ill. App. 3d at 328, 642 N.E.2d at 154. As long as a notice of appeal is sufficient to serve this purpose, it is sufficient to invoke our jurisdiction. If the notice of appeal fairly and accurately sets out the order appealed and relief sought, it is sufficient to confer jurisdiction unless the appellee is prejudiced by any omissions or deficiencies. *Burtell*, 76 Ill. 2d at 433-34, 394 N.E.2d at 383; *Nussbaum*, 267 Ill. App. 3d at 328, 642 N.E.2d at 154.

Here, the notice filed by Joseph M. clearly stated that he was seeking appellate review of an order entered in his case in the circuit court of Randolph County on November 19, 2008. There was only one such order, and as Joseph points out, the fact that the State responded to his notice of appeal by filing a brief addressing that order demonstrates that the State was not prejudiced by his failure to comply with the requirements of form set out in Rule 303. Because the notice of appeal was adequate to serve its purpose and the State was not prejudiced, we find that it was sufficient to trigger appellate jurisdiction. We note that counsel was appointed to represent Joseph five days after he filed his notice of appeal. It would have been better practice for his appointed attorney to file an amended notice of appeal on his behalf. However, this does not alter our conclusion that the notice was sufficient for jurisdictional purposes.

The State next urges us to reject the respondent's contention that we may review this case under an exception to the mootness doctrine. The order Joseph M. has appealed in this case expired by its own terms before the appeal reached this court. Because the order is no longer in effect, we cannot grant effective relief. Thus, the issues raised in this appeal are moot. *In re Barbara H.*, 183 Ill. 2d 482, 490, 702 N.E.2d 555, 559 (1998). Ordinarily, appellate courts do not have jurisdiction to consider moot issues. We may only consider Joseph's claims if they fall within a recognized exception to the mootness doctrine. *In re Alfred H.H.*, 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009). Although there is no general

5

exception for mental health cases, these cases usually fall within a recognized exception. *In re Alfred H.H.*, 233 Ill. 2d at 355, 910 N.E.2d at 80.

Joseph argues that we may consider this appeal under either the public-interest exception or the capable-of-repetition-yet-evading-review exception. Under the public-interest exception, we may consider his claims if (1) they present issues of public concern, (2) an authoritative determination is needed to guide public officials and courts, and (3) the question is likely to recur. *In re Alfred H.H.*, 233 Ill. 2d at 355, 910 N.E.2d at 80. Under the capable-of-repetition-yet-evading-review exception, we may hear this appeal if (1) the action challenged is of such short duration that it cannot be fully litigated before becoming moot and (2) there is a reasonable likelihood that the same party will be subjected to the same action again. *In re Alfred H.H.*, 233 Ill. 2d at 358, 910 N.E.2d at 82.

The State, however, points to our supreme court's recent decision in *In re Alfred H.H.* There, the court found that the case before it did not fall within either of these two exceptions. Central to the court's conclusion was the fact that the case involved a claim that there was insufficient evidence to prove that the respondent was subject to an involuntary admission by clear and convincing evidence. Two of the four arguments Joseph raises in this case likewise involve challenges to the sufficiency of the evidence. We note that after *In re Alfred H.H.*, Illinois courts addressing appellate jurisdiction in mental health cases–including this court–have specifically noted that the issues they were being called upon to decide had broader implications than most sufficiency-of-the-evidence claims. See, *e.g.*, *In re Eric H.*, 399 Ill. App. 3d 831, 833, 927 N.E.2d 867, 869-70 (2010); *In re Robert F.*, 396 Ill. App. 3d 304, 311, 917 N.E.2d 1201, 1206 (2009). However, the supreme court did not hold that a sufficiency-of-the-evidence claim can *never* fit within an exception to the mootness doctrine. Indeed, the court emphasized as follows: "[T]he evaluation of the established mootness exceptions must be conducted on a case-by-case basis. This evaluation must consider all the

6

applicable exceptions in light of the relevant facts and legal claims raised in the appeal." *In re Alfred H.H.*, 233 Ill. 2d at 364, 910 N.E.2d at 85. We find that the relevant facts in this case lead to a different conclusion with respect to jurisdiction.

*In re Alfred H.H.* involved an order for initial involuntary admission. The State's witness at the hearing was a psychiatrist who had previously treated the respondent on six occasions and had also examined him for the purpose of providing a certificate in support of the petition. The psychiatrist testified about his personal observations of the respondent's erratic and agitated behavior during that examination. *In re Alfred H.H.*, 233 Ill. 2d at 349, 910 N.E.2d at 76-77. In addition, the respondent testified at the hearing. *In re Alfred H.H.*, 233 Ill. 2d at 349, 910 N.E.2d at 77.

On appeal, the respondent argued that this evidence was insufficient to support a finding that he was subject to an involuntary admission by clear and convincing evidence. *In re Alfred H.H.*, 233 Ill. 2d at 350, 910 N.E.2d at 77. In finding that this argument did not merit invoking an exception to the mootness doctrine, the court explained that sufficiency-of-the-evidence claims require "inherently case-specific" review. *In re Alfred H.H.*, 233 Ill. 2d at 356, 910 N.E.2d at 81. Thus, the court found, the case did not involve the type of "broad public[-]interest issues" found in most mental health cases. *In re Alfred H.H.*, 233 Ill. 2d at 356-57, 910 N.E.2d at 81. In addition, the court found that any decision it could render would be unlikely to provide guidance to courts and public officials in other cases. *In re Alfred H.H.*, 233 Ill. 2d at 358, 910 N.E.2d at 82. This made the public-interest exception inapplicable. The court also found the capable-of-repetition-yet-evading-review exception inapplicable because any future petitions involving the same respondent would, presumably, be supported by different evidence. *In re Alfred H.H.*, 233 Ill. 2d at 360, 910 N.E.2d at 83.

Although the instant case involves claims of error which, like that involved in the *In re Alfred H.H.* case, fall under the general description "sufficiency of the evidence," we

7

believe that Joseph's arguments are far less unique and fact-specific than those involved in *In re Alfred H.H.* As noted, the trial court in that case heard testimony related to the testifying psychiatrist's recent direct observations of the respondent. The court also observed the respondent when he testified. Thus, the resolution of his sufficiency-of-the-evidence argument would have required a very fact-specific analysis of the evidence presented to determine whether it supported the trial court's conclusion. *In re Alfred H.H.*, 233 Ill. 2d at 360, 910 N.E.2d at 83.

By contrast, as we will explain in more detail later, it appears that very little of the evidence before the court in this case related to Joseph's current condition; instead, the State and the court appeared to rely on his history of mental illness and unwillingness to take medication. This sort of cursory review is alarmingly frequent. See *In re Andrew B.*, 237 Ill. 2d 340, 355, 930 N.E.2d 934, 943 (2010) (pointing to the increasing number of cases in which appellate courts have "expressed serious concerns with the State's failure to adhere to the [Mental Health and Developmental Disabilities] Code's procedural safeguards"); see also, *e.g.*, *In re Phillip E.*, 385 Ill. App. 3d 278, 895 N.E.2d 33 (2008) (addressing issues strikingly similar to those before us). Moreover, Joseph argues that because the right to refuse to take psychotropic medication is fundamental, the State cannot be permitted to involuntarily commit him based solely on the presumed need to continue to medicate him against his will. Our resolution of this question will require us to consider the interplay between the two types of mental health orders.

With this in mind, we find that we may consider Joseph's arguments under the capable-of-repetition-yet-evading-review exception. As noted, this exception allows us to consider an otherwise moot appeal if (1) the action challenged is of such short duration that the issues raised will become moot before they can be fully litigated and (2) there is a reasonable likelihood that the same party will be subjected to the same action again. *In re*

8

*Alfred H.H.*, 233 Ill. 2d at 358, 910 N.E.2d at 82. Orders for continued involuntary admission may not last longer than 180 days. 405 ILCS 5/3-813(b) (West 2008). This is not enough time for an appeal to be fully litigated before the challenged order expires. In addition, Joseph has a long history of mental illness and has been subject to multiple petitions for continued involuntary admission. As we have mentioned, the issues raised in this appeal not only can recur but often do recur. It is thus reasonably likely that the same problems will arise again for Joseph M. on future petitions for continued admission. We find that both criteria are met, and we will therefore consider Joseph's claims.

We turn now to the merits. Joseph first argues that the State did not show that he was subject to continued involuntary admission by clear and convincing evidence. He also argues that the State failed to present any evidence to show that continued admission was the least restrictive form of treatment available. These issues are interrelated, and we will discuss them together.

The type of evidence presented by the State in this case is nearly identical to that presented in *In re Phillip E.* There, as here, the only witness to testify was a social worker at Chester who met with the respondent one time, reviewed his records, and discussed his situation with members of his treatment team. *In re Phillip E.*, 385 Ill. App. 3d at 280, 895 N.E.2d at 38. There, as here, the social worker offered no testimony about her own observations of the respondent even though she had met with him. *In re Phillip E.*, 385 Ill. App. 3d at 285, 895 N.E.2d at 41. None of the documentation submitted in support of the petition for continued commitment or any other records were entered into evidence, which is also true in this case. *In re Phillip E.*, 385 Ill. App. 3d at 284, 895 N.E.2d at 40.

As in this case, the social worker there testified that Phillip had shown improvement in the months leading up to the hearing and that his treatment team had recommended transferring him to a less restrictive setting. *In re Phillip E.*, 385 Ill. App. 3d at 280-81, 895

9

N.E.2d at 38. She nevertheless opined that he remained mentally ill, could be reasonably expected to harm himself or others if not medicated, and had a history of refusing medication. *In re Phillip E.*, 385 Ill. App. 3d at 281, 895 N.E.2d at 38. Like the testifying witness in this case, she provided no basis or explanation for that conclusion.

In finding that this testimony fell far short of what was needed to support a finding that Phillip was subject to continued involuntary admission by clear and convincing evidence, we explained that clear and convincing evidence requires "explicit medical testimony" from a witness whose opinion is based on a "history of direct observation of the respondent on several occasions." *In re Phillip E.*, 385 Ill. App. 3d at 284, 895 N.E.2d at 41; see also 405 ILCS 5/3-807 (West 2008) (providing that a respondent may be found subject to involuntary admission only if "at least one psychiatrist, clinical social worker, or clinical psychologist who has *examined* him testifies in person at the hearing" (emphasis added)).

We note that, as the State has argued in this case, the witness may properly base his or her opinion or diagnosis *in part* on the respondent's treatment records. See *In re Lisa G.C.*, 373 Ill. App. 3d 586, 594-95, 871 N.E.2d 794, 802 (2007) (explaining that an expert who examines a patient "may properly consider a respondent's complete medical history" and finding the court's conclusion supported by the witness's testimony about both the respondent's medical history and his own direct observations of the respondent). However, as we explained in *In re Phillip E.*, there must be factual support for the witness's opinions. *In re Phillip E.*, 385 Ill. App. 3d at 285, 895 N.E.2d at 41. Moreover, where the State chooses not to provide the testimony of a witness who is a part of the respondent's treatment team, the court has an obligation to carefully examine the facts to determine whether that testimony, standing alone, provides clear and convincing proof. *In re Phillip E.*, 385 Ill. App. 3d at 285, 895 N.E.2d at 41.

Here, the State's only witness, Jamia Klausing, testified that she met Joseph M.,

10

reviewed his records, and spoke with members of his treatment team. She described some of the delusions he suffered, but she did not specifically testify about any of her own observations of his behavior or offer any factual basis to connect these delusions with her conclusion that he would be likely to harm himself or others if not medicated. It is certainly reasonable to believe that the nexus likely exists. The certificates filed in support of the petition state that Joseph hit another patient in May 2007 and that even though he has not engaged in any violent behavior since that time, he becomes agitated when his delusions of grandeur are challenged. However, the certificates were not offered into evidence, and neither of the experts who provided them were called to testify. See *In re Phillip E.*, 385 Ill. App. 3d at 284, 895 N.E.2d at 40. As we concluded in *In re Phillip E.*, this simply does not provide an adequate factual basis for the court to accept Klausing's conclusion that Joseph will be a danger to the community if released.

Moreover, Klausing's testimony focused largely on her opinion that Joseph needed to be *medicated* in order not to pose a risk of harm to the community. For the reasons we have just discussed, we do not believe that her testimony included sufficient facts to support this conclusion. However, even if the need for continued medication *had* been proven by clear and convincing evidence, it would not automatically lead to the conclusion that continued hospitalization is required. This is not to say a court can never find that a patient is subject to an involuntary admission based primarily on a need for involuntary medication which cannot realistically be effectuated any other way. Indeed, the ability to enforce a court-ordered medication regime may well be relevant to the need for continued admission. However, we do not believe that the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2008)) contemplates the kind of bootstrapping that occurred in this case.

The Mental Health Code requires separate proceedings to authorize an involuntary

11

admission and the involuntary administration of psychotropic medication, and orders authorizing these types of treatment must be supported by different sets of findings. See 405 ILCS 5/2-107.1(a-5)(4) (West 2008) (setting out the criteria for authorizing the involuntary administration of psychotropic medication); 405 ILCS 5/1-119 (West 2006) (setting forth the criteria for an involuntary admission). Even a patient who has already been found to be subject to an involuntary admission may not be medicated against his will unless the statutory criteria for the involuntary administration of psychotropic medication are met. *In re Evelyn S.*, 337 Ill. App. 3d 1096, 1106, 788 N.E.2d 310, 318 (2003) (citing 405 ILCS 5/2-107.1(a-5)(2)(i) (West 2000)). Conversely, a patient who has been found subject to involuntary medication may not be found to be subject to an involuntary admission based solely on that finding. As this court has recognized, orders for involuntary admission are "inherently more restrictive than other types of mental health orders." *In re Michael H.*, 392 Ill. App. 3d 965, 972, 912 N.E.2d 703, 709 (2009).

Here, the State alleged that Joseph is subject to an involuntary admission because he will be dangerous if he is not medicated and that an involuntary admission is the only realistic way to make sure he takes his prescribed medication. Joseph argues that because the right to refuse medication is fundamental, such bootstrapping is not permissible. While we do not find a *per se* rule to that effect necessary to protect the rights of patients such as Joseph M., we believe that the principles we have just discussed demand, at the very least, clear and convincing proof that the respondent (1) meets the criteria for the involuntary administration of psychotropic medication, (2) will meet the criteria for an involuntary admission if not medicated, and (3) cannot be effectively medicated if released. In this case, none of these three propositions were supported by clear and convincing evidence.

As previously discussed, Klausing's testimony focused largely on her concern that Joseph would not take his medication unless he was subject to an order for the involuntary

12

administration of psychotropic medication. It was only in response to a leading question that she predicted he would stop taking his medication if he were released from Chester. She offered no testimony related to whether Joseph currently met–or would likely continue to meet–the criteria for authorizing involuntary medication.

In addition, Klausing was not asked about the availability of any alternative ways to ensure that Joseph took his medication. She was not asked, for example, if he had any family members or friends into whose care he might be released. See 405 ILCS 5/3-815 (West 2008) (authorizing courts to enter orders for the care and custody of the respondent). She was not asked if an agreed order for alternative treatment had been considered (see 405 ILCS 5/3-801.5 (West 2008)) or whether some other form of alternative treatment could be ordered (see 405 ILCS 5/3-812(a) (West 2008); see also *In re Nancy A.*, 344 Ill. App. 3d 540, 555, 801 N.E.2d 565, 580 (2003) (pointing out that a court ordering treatment "has several options at its disposal")). Thus, the State failed to provide any factual basis to connect the need for continued medication with the need for continued admission and also failed to give the court any basis to conclude that no less restrictive alternatives were appropriate or available.

This omission is particularly troubling because the Mental Health Code expressly provides a preference for care other than by an involuntary admission. 405 ILCS 5/3-811 (West 2008); *In re Nancy A.*, 344 Ill. App. 3d at 556, 801 N.E.2d at 580. For this reason, a person may not be ordered admitted to a facility involuntarily unless the court also finds that this is the least restrictive treatment available. See 405 ILCS 5/3-811 (West 2008); *In re Nancy A.*, 344 Ill. App. 3d at 555, 801 N.E.2d at 580. This requirement "is not met merely because the State's expert opines [that] commitment is the least restrictive means." *In re Nancy A.*, 344 Ill. App. 3d at 556, 801 N.E.2d at 580. Here, Klausing testified only that Joseph had refused medication in the past and indicated he would continue to do so, and Klausing concluded that hospitalization was the only way to prevent that from occurring.

She offered no testimony about which less restrictive alternatives had been considered and why each had been rejected. The unsupported conclusion of an expert witness who is not even a part of the respondent's treatment team does not provide clear and convincing proof.

Furthermore, Klausing testified that Joseph's condition had improved in recent months and that his treatment team was considering a less restrictive placement for him. No evidence was presented to explain why her opinion was a more accurate gauge of Joseph's readiness to leave the facility than the opinions of those who actually treated him. In light of the foregoing, we simply cannot endorse the State's failure to even attempt to meet the burden imposed on it by the Mental Health Code.

The State argues that our decision in *In re Kevin S.*, 381 Ill. App. 3d 260, 886 N.E.2d 508 (2008), is "directly on point against the respondent." We disagree. There, as here, there was testimony that the respondent would likely stop taking his medication if released and that his condition would likely deteriorate as a result. *In re Kevin S.*, 381 Ill. App. 3d at 266, 886 N.E.2d at 515. That is where the similarities end. The social worker there testified that Kevin S. was not improving in response to medication and other treatment. *In re Kevin S.*, 381 Ill. App. 3d at 262, 886 N.E.2d at 512. He testified that Kevin was not functioning particularly well even in the secure environment of the mental health facility and that he needed "to be put in restraints as recently as two weeks before the hearing." *In re Kevin S.*, 381 Ill. App. 3d at 266, 886 N.E.2d at 515. In addition, the social worker's opinion that continued hospitalization was the least restrictive alternative for Kevin was in line with the opinions of his treating psychiatrist and psychologist. *In re Kevin S.*, 381 Ill. App. 3d at 267, 886 N.E.2d at 515. We rejected the respondent's contention that there was insufficient evidence to support the court's finding that an involuntary admission was the least restrictive treatment available. We found that the evidence that Kevin was unable to function well even in the secure environment of the hospital provided ample support for the conclusion that

14

hospitalization was the least restrictive alternative. Thus, *In re Kevin S.* does not support the State's position here. We conclude that the State failed to provide sufficient evidence to carry its burden.

Joseph M. next contends that the State failed to comply with the requirement that the petition include the name of a close relative or friend. The statute provides, in relevant part, as follows:

> "(b) The petition shall include ***:
>
> ***
>
> 2. The name and address of the spouse, parent, guardian, substitute decision maker, if any, and close relative[] or[,] if none, the name and address of any known friend of the respondent ***. If the petitioner is unable to supply any such names and addresses, the petitioner shall state that diligent inquiry was made to learn this information and specify the steps taken." 405 ILCS 5/3-601(b)(2) (West 2008).

Joseph points out that he has a brother and a sister who could have–and, he contends, should have–been named in the petition. He also points out that the staff at Chester was aware of this fact. Thus, he contends, there is no excuse for failing to comply with the requirement that they be named. See *In re Ellis*, 284 Ill. App. 3d 691, 694, 672 N.E.2d 893, 895 (1996). He further argues that he was prejudiced by the State's failure to name his brother or sister in the petition because, had they been contacted, one of them might have been willing and available to care for him.

The State, by contrast, argues that Joseph has forfeited this "hypertechnical" argument by failing to raise it at the hearing because, according to the State, "this alleged defect in the petition could have been corrected in a few seconds" had he done so. The State further contends that Joseph cannot demonstrate that he suffered any prejudice because of the defect

15

for two reasons: first, the treatment plan filed in support of the petition mentioned that Joseph was in contact with his brother and sister, thereby providing the necessary "information about the respondent's family," and second, the statutory requirement to provide family-or-friend information is really designed for initial petitions for involuntary commitment. The State points out that in those cases, a respondent's family likely will not know that the respondent is facing a petition for an involuntary admission and that it is important that the petitioner attempt to contact the family so they can provide crucial information to aid in the diagnosis and treatment of the respondent or perhaps help the respondent obtain legal representation.

As the State appears to acknowledge, the purpose of the statutory requirement is to ensure that the petitioner makes every effort to contact a responsible family member or friend. Because a respondent might be prejudiced by the petitioner's failure to follow this mandate, a reversal is generally warranted *even absent an objection*. *In re Denise C.*, 348 Ill. App. 3d 889, 892, 810 N.E.2d 654, 657 (2004). We therefore reject the State's forfeiture argument. However, the failure to include family-or-friend information on the petition itself is not fatal where the required information is found elsewhere in the petition. *In re Denise C.*, 348 Ill. App. 3d at 892, 810 N.E.2d at 657. Thus, in *In re Denise C.*, the State's failure to list any close relative or friend of the respondent in the petition did not require a reversal where the record established that the only friend or family member she was willing to reveal was "an 'abusive ex-boyfriend,' clearly not the responsible contact person contemplated by the [Mental Health] Code." *In re Denise C.*, 348 Ill. App. 3d at 892, 810 N.E.2d at 657. A reversal was not required because it was clear from the petition as a whole that the person who filled it out had made a diligent effort to find any family members or friends who should have been contacted. *In re Denise C.*, 348 Ill. App. 3d at 892-93, 810 N.E.2d at 657.

Similarly, in *In re Robin C.*, the respondent argued that a reversal was warranted where the petition failed to include the names and addresses of her mother and aunt. *In re*

16

*Robin C.*, 385 Ill. App. 3d 523, 527-28, 898 N.E.2d 689, 693 (2008). There, a psychiatrist testified that he had contacted Robin's mother and tried unsuccessfully to contact her aunt. *In re Robin C.*, 385 Ill. App. 3d at 528, 898 N.E.2d at 693. He even testified about the information he had gleaned from speaking with Robin's mother. *In re Robin C.*, 385 Ill. App. 3d at 527, 898 N.E.2d at 693. It is for this reason that the court found that Robin suffered no prejudice from the failure to name either relative in the petition. *In re Robin C.*, 385 Ill. App. 3d at 528, 898 N.E.2d at 693.

In *In re Tommy B.*, 372 Ill. App. 3d 677, 867 N.E.2d 1212 (2007), the court found that the respondent could not demonstrate that he was prejudiced by the State's failure to name any relatives or friends, because he did not identify on appeal any person who should have been named. *In re Tommy B.*, 372 Ill. App. 3d at 685, 867 N.E.2d at 1220. Presumably, the rationale behind this holding is that if there is no concerned family member or friend who might provide useful information or help the respondent in some other way, then the respondent is not hurt by the State's failure to make diligent efforts to find such a family member or friend.

Despite finding no prejudice to the respondent, the court took the time to express its concerns over the failure of everyone involved in the process to notice and correct the error before–or, at the very latest, during–the hearing. *In re Tommy B.*, 372 Ill. App. 3d at 685, 867 N.E.2d at 1220. The court admonished, "Compliance with the requirements of the [Mental Health] Code would save countless resources" by limiting the need for appeals. *In re Tommy B.*, 372 Ill. App. 3d at 685, 867 N.E.2d at 1220. The same court reiterated this concern in *In re Robin C.*, emphasizing "the need for greater attention to detail in [mental health] cases." *In re Robin C.*, 385 Ill. App. 3d at 528, 898 N.E.2d at 693.

Here, Joseph has identified his brother and his sister as individuals who should have been named in the petition. The record indicates that he is in regular contact with them, but

17

there is no indication that they were ever contacted regarding the current petition or hearing. This is particularly prejudicial in light of the facts of this case. As we previously discussed, the evidence showed that Joseph's condition had improved with treatment, and the primary reason offered for his continued involuntary admission to Chester was the need to make sure he continued to take medication. One less restrictive alternative that could have been considered was releasing him into the care of one of his siblings. In addition, as the State acknowledges, family members can often provide valuable assistance to respondents in Joseph's position by hiring legal counsel for them. The State offers no principled reason why this is any less important on a petition for continued admission than it is on a petition for an initial admission. The record before us provides us with no basis to conclude that Joseph's siblings were ever contacted about the petition. Thus, the petition is fatally defective.

Joseph's last contention is that the court erred in failing to provide any findings of fact. In response, the State contends that (1) Joseph forfeited this argument by failing to request more detailed findings at the trial court level and (2) the findings of the trial court were sufficient because the applicable statute does not specify how detailed those findings must be. We first note that forfeiture is a limitation on the parties, not courts. We also note that there is no requirement that a litigant file a posttrial motion before filing an appeal, which is the most realistic avenue to request more detailed findings. This court recently rejected a similar argument. *In re Michael H.*, 392 Ill. App. 3d at 970, 912 N.E.2d at 707. We will therefore address the merits of Joseph's argument.

The Mental Health Code provides that courts ordering involuntary treatment *shall* state on the record their findings of fact and conclusions of law. 405 ILCS 5/3-816(a) (West 2008). In support of his argument that the court's findings in this case were inadequate, Joseph cites *In re James S.*, 388 Ill. App. 3d 1102, 904 N.E.2d 1072 (2009). That case involved an order authorizing the involuntary administration of psychotropic medication.

18

The court stated only that after hearing the testimony and observing the witnesses, it found by clear and convincing evidence that the respondent was subject to involuntary medication. *In re James S.*, 388 Ill. App. 3d at 1105, 904 N.E.2d at 1075. We found this statement insufficient to satisfy the statutory requirement because, in essence, it contained *no* facts. *In re James S.*, 388 Ill. App. 3d at 1107, 904 N.E.2d at 1077. Here, the court's findings, though somewhat conclusory, are obviously more specific than those involved in the *In re James S.* case. Thus, we do not find that case controlling.

As the State points out, the few courts to consider this question have approved of statements similar to the trial court's finding here that hospitalization is the least restrictive treatment available. See *In re Long*, 203 Ill. App. 3d 357, 363, 561 N.E.2d 290, 294 (1990); *In re Grimes*, 193 Ill. App. 3d 119, 123, 549 N.E.2d 616, 618 (1990); *In re Evans*, 86 Ill. App. 3d 263, 265-66, 408 N.E.2d 33, 35 (1980). However, even assuming that this finding was adequate, the court here never expressly made any factual findings related to whether Joseph met the statutory criteria for an involuntary admission. The court merely noted that there was "some evidence" that Joseph would be "a risk to the community" if not *medicated*. Stating that there is some evidence in the record to support a proposition is not the same as finding it for a fact to be true. Moreover, as we have previously held, the court needed to find that Joseph would pose a danger to himself or others if not involuntarily *admitted* to a facility. Even if we were to construe this comment as a finding, it fails to make the crucial link between medication and admission the same way the hearing testimony failed to make that link. Thus, we find that the statement of facts was inadequate to satisfy the statutory requirement.

For the reasons stated, we reverse the order of the trial court finding Joseph M. to be subject to an involuntary admission.

Reversed.

19

NO. 5-08-0620

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| *In re* JOSEPH M., Alleged to Be a Person Subject to Involuntary Admission to a Facility | ) Appeal from the Circuit Court of<br>) Randolph County.<br>) |
| | ) No. 08-MH-225 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Joseph M., Respondent-Appellant). | )<br>) Honorable<br>) William A. Schuwerk, Jr.,<br>) Judge, presiding. |

**Rule 23 Order Filed:**    November 3, 2010
**Motion to Publish Granted:**    December 9, 2010
**Opinion Filed**:    December 9, 2010

**Justices**:    Honorable Melissa A. Chapman, P.J.

    Honorable Richard P. Goldenhersh, J., and
    Honorable Thomas M. Welch, J.,
    Concur

**Attorneys for Appellant**    Veronique Baker, Director, Penelope S. Smith, Laurel W. Spahn, Barbara A. Goeben, Staff Attorneys, Legal Advocacy Service, Illinois Guardianship and Advocacy Commission, #7 Cottage Drive, Anna, IL 62906

**Attorneys for Appellee**    Hon. Randall Rodewald, State's Attorney, Randolph County Courthouse, Chester, IL 62233; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Kevin D. Sweeney, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864