*In re* JAMES S., Alleged to Be a Person Subject to Involuntary Treatment With Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. James S., Respondent-Appellant).

Fifth District    No. 5—07—0567

Opinion filed March 13, 2009.

Barbara A. Goeben and Veronique Baker, both of Guardianship and Advocacy Commission, of Alton, for appellant.

William A. Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

The respondent, James S., appeals from an order of the circuit court of Madison County granting Dr. Jagannath Patil's petition to involuntarily administer psychotropic medication to him. On appeal, the respondent argues that the court's decision should be reversed because, in his current setting, he was not dangerous and his health

was not at grave risk; the State failed to prove by clear and convincing evidence that he was suffering, exhibited threatening behavior, or had a deterioration in functioning; neither the circuit court's order nor the record included any findings of fact; and the circuit court's order failed to specify the tests and procedures to be performed on him. We reverse.

## FACTS

On July 19, 2007, Dr. Patil filed a petition alleging that the respondent was a person subject to the involuntary administration of psychotropic medication pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/2—107.1 (West 2006)). On July 31, 2007, at the hearing on the petition, Dr. Patil testified that the respondent had been found unfit to stand trial for retail theft and was one of his patients at the Alton Mental Health Center. Dr. Patil testified that the respondent was diagnosed with an unspecified psychotic disorder along with polysubstance dependence. Dr. Patil testified that the respondent exhibited psychotic symptoms of paranoid delusions, grandiose delusions, religious delusions, and disorganized thinking.

Dr. Patil testified that the respondent was unable to function in the structured setting of the hospital. Dr. Patil testified that the respondent had deteriorated since his admission because of his religious delusions and because he preached to his peers, which resulted in conflict. Dr. Patil testified that, in one incident, after a peer had threatened to hit the respondent, the respondent demanded transport to a different unit. Dr. Patil testified that in July, the respondent had called 9-1-1, was loud, and had invaded the personal space of the staff; that the respondent had harassed a peer who was struck by another patient; and that the respondent had displayed religious letters and had argued with staff about peers touching him, stating he would slap the peers if it did not stop. Dr. Patil also testified that the respondent believed he was the mayor of East St. Louis and that there was a conspiracy to starve him. Dr. Patil admitted that the respondent was eating, sleeping, and bathing appropriately and that the respondent had not hit anyone.

Dr. Patil testified that the benefits of the proposed treatment of risperidone and Ativan, and the alternatives of Zyprexa and Haldol, outweighed their harm and that the respondent lacked the capacity to make a reasoned decision about the treatment. Dr. Patil testified that the respondent needed psychotropic medications to help with his disorganized thinking and delusional beliefs. Dr. Patil testified that the respondent had never been administered emergency medication.

The respondent testified that this hospitalization was his first, that he was not suffering, and that he was performing his daily living activities. The respondent testified that one of his peers choked him three times and that he did not retaliate but walked away and reported it. The respondent testified that he had a mental illness called stress.

At the end of the hearing, the circuit court stated that having heard the testimony and observed the witnesses, it found by clear and convincing evidence that the respondent was a person subject to the "involuntary administration of the psychotropic medication and *** so order[ed] according to the medications requested in the [p]etition." On the same date, the circuit court entered an order for the involuntary administration of psychotropic medication, requiring the respondent to receive psychotropic medication of risperidone up to 16 milligrams a day and Ativan up to 10 milligrams a day, alternatively Zyprexa up to 20 milligrams a day or Haldol up to 100 milligrams a day, for a period not to exceed 90 days. The order did not include the circuit court's findings of fact.

On August 24, 2007, the respondent filed a motion to reconsider, arguing that the State failed to present clear and convincing evidence that he lacked the capacity to make a reasoned decision about treatment and that the petition failed to state a specific testing to be administered to him. On October 1, 2007, the circuit court denied the respondent's motion to reconsider. In its order, the court stated that it had reviewed the testimony and its notes, that the respondent lacked the capacity to make a reasoned decision about treatment, and that "[t]he [r]espondent's testimony in regard to [h]is understanding of different medications and the majority of the [r]espondent's testimony was not credible." The respondent filed a timely notice of appeal.

## ANALYSIS

■ Initially, we recognize that this case is moot. Section 2—107.1(a—5)(5) of the Code provides that in no event shall an order for the involuntary administration of psychotropic medication be valid for more than 90 days. 405 ILCS 5/2—107.1(a—5)(5) (West 2006). Here, the circuit court's order was entered on July 31, 2007. Because 90 days have passed since the entry of that order, it no longer has any force or effect, and this court cannot grant effectual relief to either party. However, because involuntary medication procedures involve matters of "substantial public concern," the period for involuntary administration of medication is of short duration, similar litigation will likely reoccur, and an authoritative determination is desirable, a review of the circuit court's order is appropriate under the public-interest exception to the mootness doctrine. *In re Robert S.*, 213 Ill. 2d 30, 45-46 (2004). We therefore address this appeal on the merits.

The respondent argues that because neither the order for involuntary treatment nor the record contains a statement of the court's findings of fact, the circuit court's order for the involuntary administration of nonemergency psychotropic medication does not comply with section 3—816 of the Code (405 ILCS 5/3—816 (West 2006)) and should be reversed. The respondent argues that the circuit court's error here is particularly problematic because the evidence does not obviously reveal nor did the circuit court clarify under what provision of section 2—107.1(a—5)(4)(B) of the Code (405 ILCS 5/2—107.1(a—5)(4)(B) (West 2006)) the circuit court authorized the involuntary administration of psychotropic medication, *i.e.*, whether the respondent exhibited deterioration in ability to function, suffering, or threatening behavior.

The State counters that the respondent has waived this issue because he failed to raise it in his motion to reconsider, that the alleged error is harmless because it did not affect the respondent's right to appellate review, and that the circuit court made findings of fact and conclusions of law sufficient to comply with the Code. The State contends that the circuit court was only required to find that the treating psychiatrist's testimony was credible and that the respondent's testimony was not and that it did so in its denial of the respondent's motion to reconsider. These contentions present disputed issues of law that we review *de novo*. See *In re Jones*, 318 Ill. App. 3d 1023, 1025 (2001).

The respondent failed to raise this issue in his posttrial motion. An issue is waived on review if it is not raised both at the trial and in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, pursuant to the plain error doctrine, this court may address a waived issue if the evidence is closely balanced or the error affects substantial rights. 134 Ill. 2d R. 615(a). The involuntary administration of medication for mental health purposes involves fundamental liberty interests. *In re Frances K.*, 322 Ill. App. 3d 203, 208 (2001). Further, the waiver rule is a limitation on parties and not on reviewing courts. See *Welch v. Johnson*, 147 Ill. 2d 40, 48 (1992) ("[a reviewing] court *** may, in furtherance of its responsibility to reach a just result, override considerations of waiver"). Accordingly, we will consider this issue on the merits.

■ "Persons who suffer from mental illness have constitutionally protected liberty interests that permit them to refuse involuntary *** administration of psychotropic medications [citation]." *In re Williams*, 305 Ill. App. 3d 506, 509 (1999). "Courts must scrutinize legislation that permits the involuntary administration of psychotropic medications to persons afflicted with mental illness, because of concerns

about the substantially invasive nature of psychotropic substances, the significant side effects associated with those medications, and the recognition that psychotropic substances may be misused by medical personnel as a means of patient control rather than treatment." *In re Williams*, 305 Ill. App. 3d at 509. "Because *** the involuntary administration of medications affect[s] important liberty interests, strict compliance with the Code's procedural safeguards is required to insure that the mental health system does not become a tool to oppress rather than to serve society." *In re Jones*, 318 Ill. App. 3d at 1025-26.

■ Section 3—816(a) of the Code states in part as follows:

"(a) Every final order entered by the court under this Act shall be in writing and shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law." 405 ILCS 5/3—816(a) (West 2006).

The legislature's use of the word "shall" "dictates the necessary components of an order authorizing the involuntary administration of psychotropic medications." *In re Williams*, 305 Ill. App. 3d at 510. As noted, in mental health cases, strict compliance with the Code is compelling because liberty interests are involved. *In re Frances K.*, 322 Ill. App. 3d at 208. "Noncompliance with statutory provisions of the Code renders a judgment entered under such circumstances erroneous and of no effect." *In re Frances K.*, 322 Ill. App. 3d at 208.

■ Here, the circuit court failed to accompany its written order with a statement on the record of its findings of fact that support the involuntary administration of psychotropic medication. Despite the State's assertion to the contrary, the circuit court's statements at the hearing and in its denial of the respondent's motion to reconsider did not amount to a sufficient statement on the record of the court's findings of fact to satisfy the mandates of the Code (405 ILCS 5/3—816 (West 2006)). The circuit court failed to make findings of fact on the record, and it failed to enter a written order that met the statutory requirements. Accordingly, we reverse the circuit court's order for the involuntary administration of nonemergency psychotropic medication. Given our disposition of this issue, we need not address the remaining arguments raised by the respondent.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Madison County.

Reversed.

GOLDENHERSH and SPOMER, JJ., concur.