# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Dawn H.*, 2012 IL App (2d) 111013

---

| | |
|---|---|
| Appellate Court Caption | *In re* DAWN H., Alleged to be a Person Subject to Involuntary Treatment (The People of the State of Illinois, Petitioner-Appellee, v. Dawn H., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-11-1013 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | June 29, 2012<br><br>August 20, 2012<br>August 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order for the involuntary administration of psychotropic medication to respondent was upheld where the evidence supported the trial court's finding that the benefits of the proposed treatment outweighed the harm. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-MH-118; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal      Veronique Baker, of Guardianship and Advocacy Commission, of Chicago, and Penelope S. Smith, of Guardianship and Advocacy Commission, of Anna, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel      PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Hutchinson and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1      In September 2011, the trial court authorized the involuntary administration of psychotropic medication to respondent, Dawn H., for a period of 90 days. 405 ILCS 5/2-107.1 (West 2010). We decline to dismiss this appeal as moot, but we affirm the trial court's order.

¶ 2      I. BACKGROUND

¶ 3      Respondent, age 30, has a 12-year history of mental illness. Specifically, respondent has been diagnosed with bipolar disorder with psychosis. Respondent first became symptomatic following the birth of her first child (respondent's two children are now in the custody of respondent's mother). According to respondent's mother, respondent has had "revolving door type hospitalizations" throughout the past decade and has been consistently noncompliant with treatment recommendations.

¶ 4      The instant episode can be traced back to April 2011, when respondent was jailed for scratching two male victims in the face. While in jail, respondent exhibited a state of psychosis and was placed in the jail medical unit. There, she went 30 days without showering, was unable to interact with others, and talked to herself. In the middle of her jail stay, she was taken to a custody hearing concerning her children. There, she got into a verbal altercation with officers of the court and spit in the faces of three officers, leading to her removal from the courtroom.

¶ 5      Respondent was subsequently placed in the Elgin Mental Health Center, and in September 2011, her treating psychiatrist, Dr. Donna Luchetta, petitioned for the involuntary administration of psychotropic medication. Luchetta averred in the petition that, for two weeks, she had observed respondent on a daily basis during group and individual interviews.

Luchetta collected information about respondent's behavior from health center staff and from jail progress notes.

¶ 6        Luchetta requested the court's permission to administer the following medications with specified alternatives should the proposed medications prove ineffective or difficult to administer: (1) lithium (or divalproex or carbamazepine) for mood stabilization; (2) olanzepine (or risperidone or haloperidol or fluphenazine) for treatment of psychosis; (3) lorazepam for agitation; (4) fluvoxamine for anxiety; (5) aripiprazole for depression; and (6) diphenhydramime, *i.e.*, Benadryl (or benztropine), to prevent side effects (*not* a psychotropic medication). Additionally, Luchetta requested authorization to perform procedures to monitor for side effects; these procedures included urinalysis, EKGs (electrocardiogram tests), and blood tests.

¶ 7        At the hearing on the petition, Luchetta testified that she observed respondent's bipolar disorder with psychosis manifested in respondent's loud, argumentative behavior; monopolizing and hyperverbal speech; hypergraphia (writing unprompted five- and six-page letters to judges, requesting that they help her find a home, even though she was housed in the health center at the time); delusions (reporting to others that the health center staff were, in effect, killing her because they did not allow her food when, in fact, she received three meals per day plus snacks); grandiose delusions (repeatedly stating that she is perfect); and impaired judgment (previously having been unable to secure housing despite receipt of a $700-per-month social security check). Additionally, while at the health center, respondent called the Will County courthouse and told the person who answered the phone that she had a gun to her head and was going to kill herself.

¶ 8        Luchetta further testified to an incident where health center staff administered three medications under a "restriction of rights" policy. On that occasion, respondent threatened others and exhibited loud, hostile behavior. The medications were: (1) haloperidol for psychosis; (2) lorazepam for agitation; and (3) diphenhydramime to prevent side effects. The medications treated the targeted conditions without side effect. However, following that incident, respondent has refused medication, hence the instant petition. Luchetta stated that, due to respondent's paranoia, respondent was unable to make reasonable decisions concerning her own treatment.

¶ 9        Finally, in 12 transcript pages of direct testimony and 5 transcript pages of cross-examination, Luchetta testified to the purpose, dosage, and potential risks and side effects of each drug listed in the petition. As to the purpose, Luchetta testified as stated in the petition and as set forth above as to each drug (*i.e.*, for mood stabilization, for treatment of psychosis, for agitation, for anxiety, and for depression). Luchetta testified extensively concerning risks, much of which was elicited during cross-examination. At one point, Luchetta testified to which specific drugs within a certain class were preferred based on the likelihood of fewer or less severe side effects: "The reason why carbamazepine is such an effective mood stabilizer is because it doesn't have many of the side effects that you might have with either lithium or divalproex sodium, yet you do have very significant mood-stabilizing benefits."

¶ 10      In closing, respondent's attorney argued: "The benefits may be somewhat apparent, but

it is very clear that the [negative] effects of this medication, contrary to [Luchetta's] minimizing it, *** are enough to give this court some pause in ordering them." In other words, respondent virtually conceded the benefits of treatment and did not question the *amount* of testimony concerning risks; rather, respondent thought the risks so grave as to preclude treatment. The court rejected respondent's argument and found that the statutory factors for the involuntary administration of psychotropic medication were met by clear and convincing evidence. The court authorized the involuntary administration of psychotropic medication and accompanying procedures for a period of 90 days. This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12       Respondent argues that the 90-day order for involuntary administration of psychotropic medication must be reversed because the State failed to present specific evidence of the benefits of each medication sought to be administered. Respondent does not question the abundance of testimony concerning the medications' risks but challenges only the adequacy of the benefits testimony. Respondent's argument implicates section 2-107.1(a-5)(4)(D) of the Mental Health and Developmental Disabilities Code. 405 ILCS 5/2-107.1(a-5)(4)(D) (West 2010). Subsection (a-5)(4)(D) states that psychotropic medication may not be involuntarily administered to the recipient unless the trial court finds by clear and convincing evidence that "the benefits of the treatment outweigh the harm." *Id.*

¶ 13       Respondent acknowledges that the 90-day order has expired and that, therefore, this court must consider whether an exception to the mootness doctrine applies. An appeal is moot where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the appellant. *In re Val Q.*, 396 Ill. App. 3d 155, 159 (2009). Generally, courts do not decide moot questions or render advisory opinions. *Id.* Exceptions to the mootness doctrine apply where: (1) the case presents a question of public import that will likely recur and the answer to that question will provide guidance to public officers in the performance of their duties; (2) the case involves events of short duration that are capable of repetition yet evading review; and (3) collateral consequences of the order could return to plague the respondent in some future proceeding or could affect other aspects of the respondent's life. *Id.*

¶ 14       The capable-of-repetition-yet-evading-review exception applies here. This exception has two elements: the challenged action must be of a duration too short to be fully litigated prior to its cessation, and there must be a reasonable expectation that the same complaining party would be subjected to the same action again. *In re Alfred H.H.*, 233 Ill. 2d 345, 358 (2009). A sufficiency claim concerning the specific evidence in an isolated case is not enough, because the next case involving the same respondent might involve completely different evidence. *Id.* at 360. Rather, there must be a substantial likelihood that the issue presented in the instant case, and any resolution thereof, will have some bearing on a similar issue presented in a subsequent case. *Id.* Examples include constitutional arguments or challenges to the interpretation of a statute that the respondent might again face. *Id.* (citing *In re A Minor*, 127 Ill. 2d 247, 259 (1989) (a newspaper seeking to publish the name of a minor who had been charged in closed criminal proceedings was reasonably expected to raise the same

constitutional challenge to the application of the statute in future cases seeking to publish the names of charged juveniles)).

¶ 15    Here, there is no question that the challenged action is of a duration too short to be fully litigated prior to its cessation. And, the record supports that there is a reasonable expectation that respondent will be subjected to similar orders again. Though the record does not contain documentation of prior commitments, respondent's mother stated that respondent has been in and out of treatment for the last decade. Respondent repeatedly thwarted treatment efforts and repeatedly engaged in dangerous behavior: allowing herself to become homeless despite adequate funds, criminally assaulting others, etc. Given her history of mental illness, resistance to treatment, and aggressive behavior, it is reasonably likely that respondent will be subjected to similar orders in the future. The State's assertion otherwise is conclusory.

¶ 16    We reject the State's position that respondent merely raises a sufficiency argument and that, therefore, resolving the issue in the present case will not affect a future case involving respondent. *Alfred H.H.*, 233 Ill. 2d at 359. At first blush, respondent's argument seems contrary to her quasi-admission before the trial court that the "benefits [of the proposed treatment] may be somewhat apparent." Given this, and given that Luchetta *clearly* identified and testified to the purpose of each drug (*i.e.*, for psychosis, for agitation, for the prevention of side effects, etc.), we take respondent's claim to be broader than one of simple sufficiency. Rather, it seems that respondent is arguing that, *per se*, a trial court is not equipped to weigh a treatment's benefits against potential harm where the only evidence as to benefits is the drug's identity, the drug's stated purpose, and a respondent's pretreatment needs. Respondent might face this issue in future proceedings. Perhaps a future petition will arise under different circumstances, but the *type* of testimony concerning benefits might very well be similar.

¶ 17    However, while we may reach respondent's argument, we see no support for it. To establish that the benefits of medication outweigh the harmful side effects so as to support the involuntary administration of psychotropic medication, the State must produce evidence of the benefits of each drug sought to be administered as well as the potential side effects of each drug. *In re Suzette D.*, 388 Ill. App. 3d 978, 985 (2009). Again, it is clear that Luchetta identified and testified to the *purpose* of each drug: (1) lithium (or divalproex or carbamazepine) *for mood stabilization*; (2) olanzepine (or risperidone or haloperidol or fluphenazine) *for treatment of psychosis*; (3) lorazepam *for agitation*; (4) fluvoxamine *for anxiety*; (5) aripiprazole *for depression*; and (6) diphenhydramime, *i.e.*, Benadryl (or benztropine), *to prevent side effects*. Luchetta also testified to respondent's pretreatment condition and thereby illuminated the need to effectuate the following treatment purposes: (1) stabilization of respondent's mood (where respondent's symptoms ranged from dazed to aggressive); (2) alleviation of psychosis (where respondent went 30 days without showering or being able to interact with others); (3) alleviation of agitation (where respondent threatened others); (4) alleviation of anxiety (where respondent wrote unprompted five- and six-page letters about her need for shelter); and (5) alleviation of depression (where respondent claimed to put a gun to her head).

¶ 18    Respondent does not suggest what further evidence is needed. Our research points to the sort of benefits evidence that aids a trial court in its determination, and we find that Luchetta's testimony satisfied these standards. In *In re Kness*, 277 Ill. App. 3d 711, 720-21

(1996), for example, this court held that, in order to prove by clear and convincing evidence that the benefits of involuntary treatment outweigh the harm to the patient, the State must first identify which specific medication will be administered. The testimony in the instant case clearly meets that threshold. Additionally, testimony concerning which specific drugs within a certain class have fewer or less-severe side effects speaks not only to the harm element, but also, albeit indirectly, to the benefits element. See, *e.g.*, *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1065 (2011) (classifying such testimony as benefits testimony, though adequacy of benefits testimony was not at issue). If a certain drug has fewer side effects, then that is a benefit. In other words, "weighing" benefits against harm is not always like placing each black-or-white factor on its respective side of the tipping scale; sometimes it is more like performing a litmus test on the total mixture of black, white, and gray factors. Luchetta provided this type of benefits testimony when she compared the side effects of various mood stabilizers.

¶ 19    Finally, to whatever extent respondent might be relying on *Suzette D.* for the proposition that the type of benefits testimony offered in this case (pretreatment condition, purpose of each drug, and statements as to which drugs have the least side effects) is *per se* insufficient evidence of benefits, we find that case distinguishable. In *Suzette D.*, the expert testified to the respondent's pretreatment condition and the purpose of each drug, but, as to at least three drugs, *not* the possible side effects. *Suzette D.*, 388 Ill. App. 3d at 986. This court did state that the expert failed to explain the benefits of each drug; however, the material part of our reasoning in reversing the trial court's involuntary-treatment order concerned the expert's absolute failure to name the side effects of certain drugs. *Id.* We cautioned that a lack of evidence as to "each and every" petitioned-for medication is fatal to the entire claim. *Id.* We further admonished against "perfunctory" prosecutions of involuntary-treatment petitions. *Id.* at 987.

¶ 20    The bottom line is that, here, unlike in *Suzette D.*, the type of evidence set forth does not *per se* signal an incomplete or perfunctory prosecution. Unlike in *Suzette D.*, there is no question that Luchetta testified in detail as to the risks associated with each and every drug. The testimony concerning benefits meets existing standards regarding benefits testimony as set forth in *Kness*. Luchetta testified to respondent's pretreatment condition, the identity and purpose of each and every drug (and therefore the pretreatment symptoms each drug targeted), and the varying levels of side effects. As respondent admitted in her closing argument, the likely benefits of each drug and course of treatment are often readily apparent: we know that a given respondent is severely ill, we know each drug's purpose, and we know which, among a respondent's myriad symptoms, each drug would target. The focus of the testimony and the bigger question to be answered often have more to do with the risks associated with each medication. Thus, the trial court here did not err, as the evidence was such that it was equipped to make a finding that the benefits of treatment outweighed the harm.

¶ 21                                      III. CONCLUSION

¶ 22            For the aforementioned reasons, we affirm the trial court's order.

¶ 23            Affirmed.