# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Rita P.*, 2013 IL App (1st) 112837

---

| | |
|---|---|
| Appellate Court Caption | *In re* Rita P., Alleged to be Subject to Involuntary Medication (The People of the State of Illinois, Petitioner-Appellee, v. Rita P., Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-11-2837 |
| Filed | February 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although respondent's appeal from the order authorizing the involuntary administration of psychotropic medication was technically moot as a result of the expiration of the 90-day duration of the order, the collateral consequences exception to the mootness doctrine applied, and due to the trial court's failure to make the factual findings in writing as required by section 3-816(a) of the Mental Health and Developmental Disabilities Code, the order was reversed to protect respondent from collateral consequences. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2011-COMH-2560; the Hon. Paul A. Karkula, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Veronique Baker and Ann Krasuski, both of Guardianship and Advocacy Commission, of Hines, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion.

Justices Cunningham and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1 Following an evidentiary hearing, the circuit court entered an order authorizing the administration of involuntary psychotropic medication to respondent, Rita P., for 90 days. On appeal, respondent contends that the order should be reversed because the trial court failed to make findings of fact, as required by section 3-816(a) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-816(a) (West 2010)). Respondent also contends that the instant appeal falls within three recognized exceptions to the mootness doctrine. We find that the case is not moot, and reverse.

¶ 2 In August 2011, respondent was a 51-year-old voluntarily admitted patient at a mental health facility. One of her treating physicians, Dr. He Yuan, filed a petition requesting a court order authorizing involuntary treatment, specifically, the administration of the drug Risperidone for up to 90 days.

¶ 3 At the September 2, 2011 hearing on the petition, respondent's son, Mayjourio P., testified that prior to respondent's admission to the mental health facility, he was living with her in Evanston, where she ran a daycare facility. In January 2008, Mayjourio P. noticed that respondent was becoming angry and isolated, and she discussed how she was going to harm the people who had wronged her. In March 2009, respondent started to talk to herself. In December 2009, respondent was involved in choir practice at her church, and Mayjourio P. noticed that she developed different personalities that she said were members of her church. Respondent started using different voices to talk to herself. Shortly thereafter, respondent stopped going to choir practice and told Mayjourio P. in February 2010 that she was "spiritually raped" by members of the church in her house, although these people had never physically been to the house.

¶ 4 As respondent's condition deteriorated, she neglected her responsibilities and had conversations with herself using up to 15 different voices at a time. Although respondent continued running the daycare, one of her own children had to be with her in case she became distracted and could not provide proper care. In September 2010, when Mayjourio P. witnessed respondent choking herself, she claimed that "the voices" or "the church" was

choking her. Respondent attempted to obtain a gun license and told Mayjourio P. that she was going to kill the church members because they were choking her. In February and March 2011 respondent placed open containers of gasoline in her house and stated that it was for "experiments."

¶ 5    One day in late July 2011, Mayjourio P. came home from work at about 6 p.m. and saw respondent lying in bed. Mayjourio P. thought she was dead because she was not responding to him. He shook her and told her to get out of bed. After about 10 minutes, respondent replied in a man's voice that "Rita [is] dead," and Mayjourio P. lifted her out of bed. He told respondent that he was taking her to the hospital, and she resisted by punching and kicking him. Mayjourio P. called the police, who took her to the hospital.

¶ 6    Dr. He Yuan testified that he was a psychiatrist at Chicago Read Mental Health Center (Read) and that respondent was admitted there on August 3, 2011. Yuan first saw respondent on August 5 and then saw her almost daily. He believed that respondent suffered from "schizophrenia paranoid type" disorder. Specifically, respondent suffered from delusions regarding members of her church that she claimed embodied her and that she attempted to choke herself because she wanted to kill the people inside of her. Based on her delusions, which sometimes were expressed through anger, Yuan believed respondent might be dangerous. He sought to medicate respondent with the antipsychotic medication Risperidone to treat her schizophrenia.

¶ 7    Respondent testified that she had a home daycare business that she closed due to the bad economy. She subsequently filed for bankruptcy and was awarded general assistance. Respondent was on several boards in the community, including the Community Economic Development Association, of which she was nominated as the treasurer between April and June 2011. Beginning in 2009, church members threatened respondent with bodily harm, and she filed numerous police reports to that effect. Respondent noted that when police removed her from her house, she initially went to Evanston hospital before going to Read.

¶ 8    Following argument, the court granted the petition. In doing so, the court stated, "The testimony here is overwhelming in support of the State's petition. All three witnesses and all the observations of the Court made in open court today so I am going to grant the petition." This appeal followed.

¶ 9    There is no dispute that the case underlying the instant appeal is technically moot, as the circuit court's 90-day involuntary medication order expired on December 1, 2011. However, respondent contends that her appeal falls within several exceptions to the mootness doctrine. In particular, respondent argues that three exceptions apply: the collateral consequences exception, the public interest exception, and the exception for issues capable of repetition yet avoiding review.

¶ 10    The collateral consequences exception allows a reviewing court to consider a case that is otherwise moot where an order for involuntary treatment "could return to plague the respondent in some future proceedings or could affect other aspects of the respondent's life." *In re Val Q.*, 396 Ill. App. 3d 155, 159 (2009); see also *In re Dawn H.*, 2012 IL App (2d) 111013, ¶ 13. For example, reversal of an involuntary treatment order could provide a basis for a motion *in limine* in a future proceeding that would prohibit any mention of the prior

treatment. *In re Alfred H.H.*, 233 Ill. 2d 345, 362 (2009). The exception applies to a first involuntary-treatment order (*In re Linda K.*, 407 Ill. App. 3d 1146, 1150 (2011)), but not where the respondent has previously been subject to involuntary treatment, since in those circumstances, any collateral consequences would have already attached (*Alfred H.H.*, 233 Ill. 2d at 362-63).

¶ 11    In this case, the parties correctly agree that respondent has not been previously subject to an order for involuntary administration of medication or other involuntary treatment. In addition, given her diagnosis, it is likely respondent may be subject to future proceedings that would be adversely impacted by past involuntary treatment. Given these circumstances, we conclude that the collateral consequences exception to the mootness doctrine applies.

¶ 12    In so finding, we reject the State's contention that respondent's mental illness and hospitalization indicate collateral consequences have already attached. Although the State cites *In re James H.*, 405 Ill. App. 3d 897, 903 (2010), in support of its argument, the court in that case primarily relied on the fact that respondent had a record with the Secret Service, which respondent does not. Moreover, this court has applied the collateral consequences exception *because* the fact respondent has a mental illness and is a danger to herself means she will likely be subject to future proceedings that could be adversely affected by her first involuntary order. *In re Gloria C.*, 401 Ill. App. 3d 271, 276 (2010). In light of our determination, we need not address the public interest exception to mootness or the exception for issues capable of repetition yet avoiding review. See *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 16.

¶ 13    Respondent filed a motion before oral argument seeking leave to cite *In re Madison H.*, 215 Ill. 2d 364 (2005). The State had no objection to the motion. We now grant the motion and turn to the merits of the case.

¶ 14    Respondent contends that by failing to state on the record or in a written order its findings of fact, the trial court failed to comply with section 3-816(a) of the Code, which provides that courts ordering involuntary treatment shall do so in writing and shall state the findings of fact and conclusions of law on the record. 405 ILCS 5/3-816(a) (West 2010).

¶ 15    We initially note that the trial court may announce an oral on-the-record statement of factual findings, enter a sufficiently detailed written order containing factual findings, or both. Here, respondent properly relies on *In re James S.*, 388 Ill. App. 3d 1102 (2009), in maintaining that because the trial court failed to do either, its order must be reversed.

¶ 16    In *James S.*, the circuit court entered an order for the involuntary administration of psychotropic medication. *James S.*, 388 Ill. App. 3d at 1105. In doing so, the trial court stated only that after hearing the testimony and observing the witnesses, it found by clear and convincing evidence that the respondent was subject to involuntary medication. *James S.*, 388 Ill. App. 3d at 1105. On appeal, this court reversed based on a finding that the circuit court's statement was insufficient to satisfy section 3-816(a) because, in essence, it contained no facts. *James S.*, 388 Ill. App. 3d at 1107.

¶ 17    Here, in delivering its ruling, the court's only statements were, "The testimony here is overwhelming in support of the State's petition. All three witnesses and all the observations of the Court made in open court today so I am going to grant the petition." This statement

is as lacking in factual detail as the statement at issue in *James S.* In our view, it does not meet the requirement of section 3-816(a) that an order for involuntary treatment shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law. Similarly, the court's written findings in this case are conclusory and not tailored to the specific facts of respondent. The written order tracks the language of section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2010)) nearly verbatim and constitutes, at best, conclusions of fact with no supporting detail. For example, to support involuntary medication, the statute requires "[t]hat the recipient has a serious mental illness or developmental disability." 405 ILCS 5/2-107.1(a-5)(4)(A) (West 2010). The written order states "[t]he recipient has a serious mental illness/developmental disability." The statute requires "[t]hat the recipient lacks the capacity to make a reasoned decision about the treatment." 405 ILCS 5/2-107.1(a-5)(4)(E) (West 2010). The written order states, "[t]he recipient lacks the capacity to make a reasoned decision about the treatment."

¶ 18    As in *James S.*, the circuit court in the instant case failed to make findings of fact on the record and failed to enter a written order that met the statutory requirements. Accordingly, we reverse the order authorizing the administration of involuntary medication. *James S.*, 388 Ill. App. 3d at 1107; see also *In re Joseph M.*, 405 Ill. App. 3d 1167, 1183 (2010) (reversing where the circuit court made no express factual findings related to whether the respondent met the statutory criteria for involuntary admission, but merely noted that there was "some evidence" he would be "a risk to the community" if not medicated).

¶ 19    We also find that *Madison H.* supports this conclusion. In that case, the supreme court affirmed the appellate court's remand to the trial court for the limited purpose of allowing the trial court to enter more specific findings because the trial court's preprinted dispositional order, as well as the court's oral statements on the record, lacked the trial court's factual basis for its decision. *Madison H.*, 215 Ill. 2d at 378. The supreme court specifically found that the trial court's oral statements "mirror the statutory language," and "no meaningful specific factual basis is evident." *Madison H.*, 215 Ill. 2d at 378.

¶ 20    In reaching this conclusion, we find unpersuasive the State's argument that reversal is not required here because the statutory requirements of section 3-816(a) of the Code, *i.e.*, that courts ordering involuntary treatment shall state on the record their findings of fact and conclusions of law, can be viewed as discretionary rather than mandatory. We disagree and find that the requirement is mandatory. In support of its position, the State primarily relies on two criminal cases. See *People v. Porter*, 122 Ill. 2d 64, 82-83 (1988); *People v. Davis*, 93 Ill. 2d 155, 162 (1982) (construing sections of the Code of Criminal Procedure of 1963 and the Unified Code of Corrections as discretionary rather than mandatory). We do not believe these cases are properly applied to the instant mental health case. See *In re Stephenson*, 67 Ill. 2d 544, 553-56, 560-61 (1977) (discussing the differences between criminal and mental health cases).

¶ 21    Unlike the provisions of the Code of Criminal Procedure of 1963, and the Unified Code of Corrections analyzed by the *Porter* and *Davis* courts, the provisions of the Code here must be narrowly construed to protect the respondent's significant liberty interest in remaining free from unwanted treatment. *In re Alaka W.*, 379 Ill. App. 3d 251, 274-75 (2008) (citing *In re Barbara H.*, 183 Ill. 2d 482, 498 (1998)). We have specifically held that " '[b]ecause *** the

involuntary administration of medications affect[s] important liberty interests, strict compliance with the Code's procedural safeguards is required to insure that the mental health system does not become a tool to oppress rather than to serve society.' " *James S.*, 388 Ill. App. 3d at 1107 (quoting *In re Jones*, 318 Ill. App. 3d 1023, 1025-26 (2001)). Morever, the use of the word "shall" " 'dictates the necessary components of an order authorizing the involuntary administration of psychotropic medications.' " *James S.*, 388 Ill. App. 3d at 1107 (quoting *In re Williams*, 305 Ill. App. 3d 506, 510 (1999)).

¶ 22 To meet the applicable statutory requirements, the trial court in this case could, for instance, have found that respondent required medication because she had a "schizophrenic paranoid type disorder." However, because the trial court failed to make any findings of fact, it did not adhere to the statute. Had the passage of time not rendered the order technically moot, we could remand the case for entry of appropriate findings of fact. However, since the 90-day administration period has expired, the appropriate remedy is to reverse the order to protect respondent from the order's collateral consequences.

¶ 23 Reversed.