# ILLINOIS OFFICIAL REPORTS

---

### *In re Latoya C.*, 2013 IL App (1st) 121477

---

| | |
|---|---|
| Appellate Court Caption | *In re* LATOYA C., Alleged to be a Person Subject to Involuntary Treatment (The People of the State of Illinois, Petitioner-Appellee, v. Latoya C., Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1477 |
| Filed | July 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order authorizing the involuntary administration of psychotropic medication to respondent was reversed on appeal due to the trial court's failure to comply with section 3-816(a) of the Mental Health Code by making a written statement in the record of its findings of fact and conclusions of law. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-COMH-1064; the Hon. Paul A. Karkula, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Veronique Baker, of Guardianship and Advocacy Commission, of Chicago, and Andreas Liewald and Laurel Spahn, both of Guardianship and Advocacy Commission, of Hines, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE TAYLOR delivered the judgment of the court, with opinion.

Presiding Justice McBride and Justice Palmer concurred in the judgment and opinion.

## OPINION

¶ 1    Following a hearing on April 17, 2012, the circuit court entered an order authorizing the administration of involuntary psychotropic medication to respondent, Latoya C., for 90 days. On appeal, respondent contends that the order should be reversed because the trial court failed to make either oral or written findings of fact, as required by section 3-816(a) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-816(a) (West 2012)); the State failed to prove that she was provided information about alternative treatment options, as required by section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2012)); and the State failed to establish each element of the involuntary medication statute (405 ILCS 5/2-107.1(a-5) (West 2012)). Respondent also contends that this appeal falls within three recognized exceptions to the mootness doctrine. We reverse.

¶ 2    On March 30, 2012, 24-year-old respondent was admitted to a mental health facility after an apparent dispute with her cousin over money. On April 12, 2012, one of her treating physicians, Dr. Vesna Pirec, filed a petition requesting a court order authorizing the administration of involuntary treatment, specifically, the administration of an antipsychotic medication known as haloperidol (Haldol) for up to 90 days.

¶ 3    At the hearing on the petition, three witnesses testified. Latasha C., respondent's sister, testified that respondent was diagnosed as schizophrenic and bipolar in 2005. They lived together for a time prior to respondent's admission to the hospital in March 2012. During the time they lived together, respondent told her that the television and radio were talking to her. When respondent started taking medication, *i.e.*, Zyprexa, she was no longer delusional. However, she discontinued taking the medication, and, in October 2011, respondent and their mother got into an argument, which resulted in respondent being admitted to the hospital. She was released the following night and went to a shelter. On February 9, 2012, respondent had a baby and subsequently moved in with her cousin. When respondent was in the final stages of her pregnancy, she became increasingly irritable and would yell at her family. She

-2-

was not taking her medication at that time.

¶ 4 Dr. Vesna Pirec, a psychiatrist, testified that she treated respondent in October 2011 for five days, but did not prescribe psychotropic medication for her at that time. On April 2, 2012, she began treating respondent during her most recent hospitalization on March 30, 2012. Pirec diagnosed respondent with schizoaffective disorder, and testified that she was symptomatic at the time of the hearing. Respondent told Pirec that she was a celebrity, Obama came to the hospital, and she had an aura around her. Respondent also acted provocatively in the hospital and was paranoid. Pirec was concerned that respondent's symptoms would affect her ability to care for her child. Pirec administered two doses of Haldol to respondent on or about April 4, 2012. However, after taking the two doses, respondent refused to take more medication. Pirec then sought authority to involuntarily medicate respondent, primarily with Haldol, for 90 days. Pirec wanted to use Haldol to treat respondent's psychosis, and she believed the benefits of the drug would outweigh the risk of harm for respondent. Alternatively, Pirec testified that she would seek to treat respondent with other medications. Although respondent told Pirec that she did not want any medication, Pirec believed that respondent lacked an understanding of her symptoms.

¶ 5 Respondent testified that immediately before she was admitted to the hospital she was living with her cousin and supporting herself with social security. She did not make any physical threats to harm herself or anyone else, and her most recent admission to the hospital in March occurred because she had a dispute with her cousin over money. During her time in the hospital, she took four doses of Haldol, but was unsure if she received any benefits from the medication. The side effects from the medication included dizziness, drowsiness, an increase in appetite, and blurred vision. Although respondent did not have a problem with blurred vision prior to taking Haldol, the problem persisted after she stopped taking the medication. Respondent started seeing Dr. Pirec after she refused to take Haldol. She did not feel that Pirec knew her well because Pirec only saw her for about five minutes per day. At the time of trial, respondent indicated that she would not consent to taking medication from Pirec because taking Haldol was the hospital's choice, and Pirec never offered her any other types of medication. She noted that hospital personnel kept telling her that the drug worked, but it did not.

¶ 6 Following closing arguments, the trial court announced its decision granting the petition. In doing so, the court stated, "[t]he doctor's testimony as an expert witness was extremely credible; therefore, causing me to certainly see that the State has met their burden by clear and convincing evidence." The court also entered a written order stating, in part, that "[t]he recipient has a serious mental illness/developmental disability" and "[t]he recipient exhibits deterioration of his/her ability to function, suffering or threatening or disruptive behavior." This appeal followed.

¶ 7 There is no dispute that the case underlying the instant appeal is moot, as the circuit court's 90-day involuntary medication order expired on July 16, 2012. However, respondent contends that her appeal falls within several recognized exceptions to the mootness doctrine. In particular, respondent argues that three exceptions apply: the collateral consequences exception, the public interest exception, and the exception for issues capable of repetition yet avoiding review.

¶ 8    The collateral consequences exception allows a reviewing court to consider an otherwise moot case where an order for involuntary treatment " 'could return to plague the respondent in some future proceedings or could affect other aspects of the respondent's life.' " *In re Rita P.*, 2013 IL App (1st) 112837, ¶ 10 (quoting *In re Val Q.*, 396 Ill. App. 3d 155, 159 (2009)), *appeal allowed*, No. 115798 (May 29, 2013); see also *In re Dawn H.*, 2012 IL App (2d) 111013, ¶ 13. For instance, reversal of an involuntary treatment order could provide a basis for a motion *in limine* in a future proceeding that would prohibit any mention of the prior treatment. *In re Alfred H.H.*, 233 Ill. 2d 345, 362 (2009). The exception applies to a first involuntary treatment order. *In re Linda K.*, 407 Ill. App. 3d 1146, 1150 (2011). However, it does not apply where the respondent has previously been subject to involuntary treatment because any collateral consequences would have already attached. *Alfred H.H.*, 233 Ill. 2d at 362-63.

¶ 9    Here, the parties correctly agree that respondent has not been previously subject to an involuntary administration of medication or other involuntary treatment. In addition, given her diagnosis, it is likely respondent may be subject to future proceedings that would be adversely impacted by past involuntary treatment. We thus conclude that the collateral consequences exception to the mootness doctrine applies.

¶ 10    The State's argument that collateral consequences have already attached due to her mental illness and hospitalization has been rejected by this court. In *Rita P.*, 2013 IL App (1st) 112837, ¶ 12, this court distinguished *In re James H.*, 405 Ill. App. 3d 897 (2010), which the State relies on here, noting that the court in that case primarily relied on the fact that the respondent had a record with the Secret Service in finding that collateral consequences had already attached. Similarly to the respondent in *Rita P.*, respondent in this case had no such background. In light of our determination, we need not address the public interest exception to the mootness doctrine or the exception for issues capable of repetition yet avoiding review. See *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 16.

¶ 11    Turning to the underlying merits of the instant appeal, respondent contends that by failing to make oral or written findings of fact on the record, the trial court failed to comply with section 3-816(a) of the Code, which provides that courts ordering involuntary treatment shall state on the record their findings of fact and conclusions of law. 405 ILCS 5/3-816(a) (West 2012). Relying on *Rita P.*, 2013 IL App (1st) 112837, ¶ 17, and *In re James S.*, 388 Ill. App. 3d 1102, 1105 (2009), respondent asserts that absent written or oral findings of fact, the trial court's order must be reversed for statutory noncompliance.

¶ 12    In *Rita P.* and *James S.*, the circuit court entered orders for involuntary administration of psychotropic medication. *Rita P.*, 2013 IL App (1st) 112837, ¶ 1; *James S.*, 388 Ill. App. 3d at 1103. In both instances, this court reversed, finding that the circuit courts' statements were insufficient to satisfy section 3-816(a) of the Code because they essentially contained no factual findings. In *James S.*, 388 Ill. App. 3d at 1105, the trial court only stated that after hearing the testimony and observing the witnesses, it found by clear and convincing evidence that the respondent was subject to involuntary medication. In *Rita P.*, 2013 IL App (1st) 112837, ¶ 17, the court only stated " '[t]he testimony here is overwhelming in support of the State's petition. All three witnesses and all the observations of the Court made in open court today so I am going to grant the petition.' " Moreover, the court's written findings in *Rita P.*

-4-

were conclusory, not tailored to the specific facts of the respondent, and tracked the language of section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2010)), nearly verbatim. *Rita P.*, 2013 IL App (1st) 112837, ¶ 17; see also *In re Aaron L.*, 2013 IL App (1st) 122808, ¶ 26 (holding that the order terminating wardship and guardianship and discharging the case was ineffective under section 2-31(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-31(2) (West 2010)), where the circuit court entered a written form order and made no specific findings of fact).

¶ 13    Here, in delivering its ruling, the trial court's sole statement was, "[t]he doctor's testimony as an expert witness was extremely credible; therefore, causing me to certainly see the State has met their burden by clear and convincing evidence." This statement is as lacking in factual detail as the statements at issue in *Rita P.* and *James S.* In our view, it does not meet the requirement of section 3-816(a) of the Code that an order for involuntary treatment shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law. Furthermore, the written order memorializing the trial court's oral decision is a form order that contains no specific findings of fact. Accordingly, we reverse the order authorizing the administration of involuntary medication. *Rita P.*, 2013 IL App (1st) 112837, ¶ 22; see also *In re Madison H.*, 215 Ill. 2d 364, 378 (2005) (affirming the appellate court's remand to the trial court for the limited purpose of allowing it to enter more specific findings because the trial court's preprinted dispositional order, as well as its oral statements, lacked a factual basis for the court's decision); *In re Joseph M.*, 405 Ill. App. 3d 1167, 1183 (2010) (reversing where the circuit court made no express factual findings related to whether the respondent met the statutory criteria for involuntary admission).

¶ 14    In reaching this conclusion, we find unpersuasive the State's argument that the trial court's failure to comply with section 3-816(a) does not require reversal because although that section states a trial court's order shall be in writing and accompanied by a statement on the record of the court's findings of fact and conclusions of law, Illinois law is well established that such statutory language is merely directory rather than mandatory. See *People v. Porter*, 122 Ill. 2d 64, 82-83 (1988); *People v. Davis*, 93 Ill. 2d 155, 162 (1982) (construing sections of the Code of Criminal Procedure of 1963 and the Unified Code of Corrections as discretionary rather than mandatory).

¶ 15    The State acknowledges this court recently rejected the argument that *Porter* and *Davis* support the conclusion that the statutory language of section 3-816(a) is merely directory rather than mandatory. See *Rita P.*, 2013 IL App (1st) 112837, ¶¶ 20-22. Nevertheless, the State maintains that *Rita P.* failed to explain why the directory nature of the provisions at issue in *Porter* and *Davis* did not violate a criminal defendant's liberty interest, while a ruling that section 3-816 of the Code was directory instead of mandatory would violate a respondent's liberty interest. Furthermore, the State maintains that *Rita P.* failed to explain how a respondent's liberty interest is afforded less protection by a circuit court's harmless failure to express its factual findings. Despite the State's contentions to the contrary, *Rita P.* addressed the State's concerns by stating that the respondent had a "significant liberty interest in remaining free from unwanted treatment," and "strict compliance with the Code's procedural safeguards is required to insure that the mental health system does not become a tool to oppress rather than serve society. [Citation.]" (Internal quotation marks omitted.)

*Rita P.*, 2013 IL App (1st) 112837, ¶ 21 (relying on *In re Alaka W.*, 379 Ill. App. 3d 251, 274-75 (2008), and *James S.*, 388 Ill. App. 3d at 1107.). We thus find no reason to depart from the well-reasoned holding in *Rita P*.

¶ 16    In light of our disposition, we need not address respondent's remaining contentions regarding whether the State failed to prove that respondent was provided information about alternative treatment options, or failed to establish each element of the involuntary medication statute.

¶ 17    For the foregoing reasons, we reverse the judgment of the circuit court.

¶ 18    Reversed.